IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| DEVRON TEMPLE | § | |
| | § | |
| Plaintiff, | § | |
| | § | CASE NO: _____ |
| V. | § | **JURY TRIAL DEMANDED** |
| | § | |
| INDORAMA VENTURES OXIDES, LLC. | § | |
| | § | |
| Defendant. | § | |

# COMPLAINT

COMES NOW the Plaintiff, DEVRON TEMPLE, (hereinafter, "Plaintiff") hereby sue Defendant, INDORAMA VENTURES OXIDES, LLC ("Defendant") and for cause would show the following:

## I.
## PARTIES

1. Plaintiff, DEVRON TEMPLE ("Plaintiff"), is a resident of the State of Texas and lives in Jefferson County, Texas.

2. Defendant, INDORAMA VENTURES OXIDES, LLC ("Defendant" or "Indorama") is a Delaware limited liability company with its main office in Texas. Indorama may be served through its registered agent, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701.

## II.
## JURISDICTION AND VENUE

3. This court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343.

4. Venue properly lies within this District under 28 U.S.C. § 1391(b). The named defendants perform their official duties in this District, and the events and omissions giving rise to the Plaintiffs' claims occurred in this District.

### III.
### PROCEDURAL REQUIREMENTS

5. On November 16, 2023, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunities Commission ("EEOC"). In this charge, Plaintiff asserted discrimination based on race, disability, retaliation, and hostile work environment.

6. On December 12, 2023, Plaintiff received his Notice of Right to Sue. All conditions precedent to the filing of this suit have been met.

### IV.
### FACTS

7. Sometime prior to 2006, Plaintiff worked for Defendant Indorama Ventures, LLC ("Defendant" or "Indorama") as an External Control Operator.

8. Despite Plaintiff having developed the qualifications at another company some years later to work as Internal Console Operator, Defendant failed to offer any opportunity for Plaintiff to apply, interview, or work as an Internal Console Operator during the thirteen (13) years or so that he was there. Yet, Plaintiff saw several white employees with less experience and qualifications, get hired on to Indorama as an External Control Operator, and get promoted to Internal Console Operator within three (3) to ten (10) years.

9. On January 6, 2020, Huntsman Petrochemical was bought out by Defendant Indorama Ventures, LLC ("Defendant" or "Indorama"). Hence, for all intents and purposes, Huntsman Petrochemical and Indorama should be viewed as the same entity.

### *Indorama has Engaged in Unfair Hiring Practices since 2006*

10. On June 20th, 2006, Texas Petrochemical bought Huntsman's C4 Facility, including Plaintiff's job position, and kept him on while working with Texas Petrochemical as a Control Operator. Plaintiff was trained to become Internal Control Operator and then worked in that position for an extended period of time until he was laid off.

11. Plaintiff's original employer—Huntsman Petrochemical—overlooked Plaintiff having acquired several years of experience working as an Internal Control Operator for Texas Petrochemical prior to offering Plaintiff the demoted role of External Control Operator in 2009. Plaintiff had requested that his qualifications that had been developed at Texas Petrochemical be considered by Huntsman prior to and subsequent to Huntsman placing Plaintiff in a demoted role. These requests were ignored, and Plaintiff continued working in a position that he was overqualified for.

### *Indorama's Unconscious Bias Resulted in the Extension of Preferential Treatment to White Employees.*

12. In August 2017, at Huntsman Petrochemical, due to Defendant's unconscious bias Plaintiff trained for a different Internal Console Operator position again.

13. Provided that Plaintiff was able to complete the requisite training, Plaintiff would then be regarded as qualified for the Internal Console Operator position.

14. Out of three trainees, Plaintiff was the only black employee.

15. The other two trainees were Jeremy Simms (white male) and Bobby Despain (white male). For unclear reasons, Plaintiff was denied the opportunity to complete the training program.

16. Plaintiff had joined the training program under the impression that he would be starting

3

his training at the same time as the other trainees, a reasonable expectation. Craig Lee was the Unit Manager at the time. However, this did not happen. Mr. Simms and Mr. Despain had already completed several days of training by the time that Plaintiff had arrived to initiate his first day of training. When Plaintiff complained about the inequity of the situation, nothing was done to address the matter nor did Craig Lee even make any attempt to apologize for the critical oversight.

17. Hence, Plaintiff felt isolated, left out, and deserted. So, Plaintiff was forced to quit the training program because of the pressure of it all and the hostile treatment he faced.

18. On September 15, 2017, Plaintiff requested family leave when his wife was pregnant, and was denied without any right to appeal. This caused him and my wife significant emotional distress. No reasons were given to him as for the denial. Lee also denied his time off to be with his wife during her childbirth. Plaintiff was also denied his request for vacation time to be with his newborn son, following his birth. The United Steelworkers Committee ("USW") had to intervene in order to get Plaintiff's FMLA approved. Human Resources later overruled Lee and granted his request.

19. On January 28, 2023, Plaintiff took sick time off due to a flare-up of gout in his foot which forced him to wear a special boot that does not-conform to OSHA safety regulations. This prevented him from working that weekend. While wearing that boot, he attended his father's birthday party. During that sick leave, Plaintiff's union representative, Clay Bonin, overheard his manager, David Avenzato, make derogatory remarks about him to a group of managers and union committee members, stating that "it's funny people can go to birthday parties but can't go to work." Plaintiff recalls being the only one on sick leave at that time that went to a birthday party that weekend, meaning the comment couldn't have been made about anyone but him. This

4

was a derogatory remark and was retaliatory and created a hostile work environment. Plaintiff feels as though if he weren't a black man on sick leave, Avenzato would have never made that comment.

20. On September 18, 2023, Indorama passed Plaintiff over for promotion for Internal Console Operator position.

21. On September 30, 2023, Kevin Choate, the acting manager of Indorama told Plaintiff that he would not be chosen for an Internal Console Operator position he applied for, even though he had a lot of the qualifications for that position and had more experience as an Internal Console Operator than the other applicants. Once again, Plaintiff was denied this promotional opportunity that has been filled, as of last week.

22. It should be noted that the system responsible for the intake of complaints filed by employees was not functioning correctly at the time Plaintiff was originally trying to file the complaint. Throughout the month of October 2023, Plaintiff made numerous attempts to file an internal complaint with Human Resources about Defendant's discriminatory practices, but was unsuccessful.

23. On November 10, 2023, however, Plaintiff was finally able to file a complaint with Human Resources about not being chosen for the Internal Console Operator position.

V.
## CAUSES OF ACTION
**COUNT ONE: DISCRIMINATION ON THE BASIS OF RACE – FAILURE TO PROMOTE**

24. Plaintiff incorporates all prior paragraphs of the Complaint as if fully set forth herein.

25. Plaintiff is a Black male and thereby qualifies as a member of a protected class.

26. Defendant has engaged in the discriminatory practices against black male employees that

is prohibited by Title VII.

### *Indorama's Unconscious Bias Resulted in the Extension of Preferential Treatment to White Employees at Several Different Time Periods*

**2017** (Craig Lee)

27. In August 2017, at Huntsman Petrochemical, Plaintiff was forced to quit a training program because of a delayed start that Indorama caused. Craig Lee purposefully misinformed Plaintiff of the training start date so that Plaintiff would miss the first several days of training.

28. This treatment was not based on any objective performance criteria or consideration.

29. Craig Lee, through an unconscious bias, was allowed to act on behalf of Defendant, when it pertained to Plaintiff's work environment and hiring practices.

30. Craig Lee, through an unconscious bias, treated Mr. Simms and Mr. Despain favorably by providing them a complete training program. Obviously, through such an opportunity, Mr. Simms and/or Mr. Despain would be the likely candidate chosen for the Internal Console Operator role, given that they had completed the training program.

31. However, because Plaintiff was never given the opportunity to "catch up" and was also told to start his training at a later date for the same position, a reasonable jury would likely infer that the circumstances giving rise to Indorama's failure to promote Plaintiff, evidences a discriminatory intent.

**2023 – Rejection of Plaintiff for Management Positions is Likely Due to an Unconscious Bias**

32. This discriminatory intent is further evidences by current and former employees of Indorama, who have provided witness statements. The first, being that of Brian Sanchez:

> "I have personally witnessed Mr. Temple be overlooked for multiple job positions including Step Up Operations Team Leader, Console Operator, and also Operations Team Lead."

6

33. Mr. Sanchez is willing to testify under penalty of perjury:

> "that is it [*his*] strong belief that [*Mr. Temple was overlooked*] because the company has an issue placing people of color in any management positions."

### COUNT TWO: DISCRIMINATION ON THE BASIS OF RACE – DISPARATE TREATMENT PURSUANT TO TITLE VII

34. Plaintiff incorporates all prior paragraphs of the Complaint as if fully set forth herein.

35. Since 2017, Indorama has failed or refused to promote Plaintiff to a position he was qualified for in favor of white male employees who were either less experienced, less qualified, or had less seniority.

36. This discriminatory intent is further evidenced by current and former employees of Indorama, who have provided witness statements. The first, being that of Brian Sanchez:

> "I have personally witnessed Mr. Temple be overlooked for multiple job positions including Step Up Operations Team Leader, Console Operator, and also Operations Team Lead."

37. Mr. Sanchez is willing to testify under penalty of perjury:

> "that is it [*his*] strong belief that [*Mr. Temple was overlooked*] because the company has an issue placing people of color in any management positions."

38. Other White employees were allowed to train with less seniority. For example,

   a. Bobby Despain (Estimated Hiring date of 03/19/2012)
   b. Ty Tomplait (Estimated Hiring date of 12/16/2013)
   c. Justin Mulhollan (Estimated Hiring date of 09/12/2016)
   d. Mathew Cody Goins (Estimated Hiring date of 05/14/2018)
   e. Sean Hugh's (Estimated Hiring date of 06/03/2019)
   f. Frank Johnson (Estimated Hiring date of 12/19/2011)
   g. Raymond Henderson (Estimated Hiring date of 05/13/2013)
   h. Garrett Thompson (Estimated Hiring date on or around 2016)

39. As such, Plaintiff is a member of a protected class given that he is Black.

40. Second, Plaintiff was qualified for the positions of Step Up Operations Leader,

Console Operator, and Operations Team Lead. Yet, Plaintiff's current upper management supervisors, Kevin Choate and David Avenzato, have recommended at least one or more of the individuals listed above for a promotion (change in title and pay).

41. Plaintiff experienced an adverse employment action in Defendant's repeated refusals to promote Plaintiff and/or repeated failures to do so.

42. In 2017, Craig Lee treated two white males outside of Plaintiff's protected class more favorably, which enable them to complete the training program for Internal Console Operator.

43. In 2023, Indorama chose less qualified white males for the positions of Step Up Operations Leader, Console Operator, and Operations Team Lead, which amounts to favorable treatment under Title VII. The comparators identified in No. 37 are similarly situated for purposes of Title VII, because they are white.

44. Therefore, Plaintiff now asserts a claim of discrimination on the basis of race – disparate treatment under Title VII of the U.S. Civil Rights Act.

**COUNT THREE: RETALIATION PURSUANT TO TITLE VII**

45. Plaintiff incorporates all prior paragraphs of the Complaint as if fully set forth herein.

46. Sometime on or around January 2023, Plaintiff suffered an episodic physical impairment which rendered him unable to fulfill the essential functions of his job. As required by Indorama's company policy, Plaintiff immediately communicated this to his supervisor,
Senior Manager David Avenzato, and had obtained a doctor's excuse to take some time off. A chain of events followed this notification.

47. At a USW Workers Committee meeting on January 8, 2023, Avenzato posited to the

8

committee a problem that Avenzato had with Plaintiff taking a vacation day and a subsequent sick day or two. Avenzato concluded that Plaintiff was lying about his medical condition when Avenzato knew about the GOUT flare-up.

48. Instead of telling the Committee that the need to take sick leave on the weekend was because of his need to recover from the GOUT, Avenzato highlighted the fact that the Plaintiff had posted a picture of himself going to someone's 80th birthday the night Plaintiff had been originally scheduled to come to work but was at home recovering.

49. This was clearly done with the intent to disparage Plaintiff's reputation in front of the USW Workers Committee and senior management. And, this comment was then corroborated by Site Director Kim Hoyt, who stated at the meeting, "Yes you have duties…[w]e hear that someone calls in sick and then we see pictures on Facebook and it looks bad."

50. Plaintiff was diagnosed with an arthritic condition – GOUT – in his foot, which forced him to wear a special boot that does not conform to OSHA safety regulations. This arthritic condition prevented him from working that weekend, and forced Plaintiff to take sick leave.

51. A third party source revealed that during this sick leave, David Avenzato, Plaintiff's White male manager, disparaged Plaintiff's reputation in front of co-workers, stating "it's funny people can go to birthday parties but can't come to work." Plaintiff learned that this statement was made while he was on leave.

52. Plaintiff clearly engaged protected activity under company policy and statutory law (i.e., taking sick leave for GOUT).

53. Given that Avenzato publicized the circumstances surrounding Plaintiff's sick leave to a

9

room full of senior management personnel, as well as, USW representatives, provides sufficient evidence for a reasonable jury to infer that Avenzato intended to sabotage Plaintiff's opportunities to advance. This act unquestionably diminished Plaintiff's professional reputation.

54. The public commentary to senior management was made on or around January 28, 2023, which was only a few days after Plaintiff took sick time for his GOUT flare-up.

55. This clearly demonstrates the temporal proximity requirement for establishing casual connection.

56. This comment affected Plaintiff's ability to complete work projects effectively upon his return. The fact that Plaintiff may have attended a birthday event while he was suffering a physical impairment that prevented him from fulfilling the essential functions of his job, should have been treated as such.

57. Instead, Plaintiff was publicly humiliated for taking medical leave.

58. Plaintiff suffered an episodic physical impairment –GOUT –which when active, substantially limits the ability to walk or stand, which are major life activities under the ADA. Indorama had a duty to reasonably accommodate but failed to do so, when he was given a non-OSHA conforming "safety boot." Under the ADA, he had a qualifying disability, was qualified to perform the job, and was qualified to take FMLA leave.

59. Defendants, however, failed to reasonably accommodate Plaintiff for the following reasons:

- gave a non-conforming OSHA safety boot upon Plaintiff notifying Defendant of the GOUT arthritic condition
- failed to share any information with Plaintiff regarding the FMLA statutory protections available

- although Plaintiff was granted sick leave for three days, that was not a reasonable accommodation given that he was instructed to wear a non-conforming OHSA safety boot as a means to achieve maximum medical improvement to return to work

- any OSHA expert would confirm for the jury that this accommodation was unusual and ill-advised under the circumstances

- a reasonable accommodation would have been to provide a mechanism for recovery within the most efficient time, if available

- Defendant failed to provide any other options or discuss any alternative methods, but failed to expressly indicate that there were no alternative methods of recovery available

60. As a consequence, Plaintiff had to use sick leave when FMLA should have been made available. Had Plaintiff not been black, Defendant would have followed proper protocol and procedure in the handling of a disability.

61. Defendant has followed proper protocol and procedure in the handling of disabilities of white employees who fulfilled similar roles. There are witnesses who can corroborate these statements.

61. As a result, Indorama committed retaliation against Plaintiff on the basis of disability in violation of Plaintiffs' rights under Title VII of the Civil Rights Act of 1964. Consequently, Indorama is liable for Plaintiff's injuries and damages alleged herein.

VI.

DAMAGES

A. **Compensatory Damages:**

62. Through its unfair hiring practices (i.e., failure to promote) and race-based harassment, Defendant caused Plaintiff to incur compensatory damages in an amount in excess of the jurisdictional limits of this Court. Plaintiff has suffered lost wages, loss of earnings capacity, lost benefits, lost bonuses, lost future earnings, mental anguish, inconvenience, loss of enjoyment of life, and front pay (for each year that Plaintiff was wrongfully denied a promotional opportunity) as a direct result of Defendant's unlawful actions against them. Plaintiff has suffered these injuries as the result of Defendant's actions and in all reasonable probability will continue to suffer these injuries in the future.

**B.     Punitive Damages:**

63. By (1) tying the Plaintiff's year-end bonus payouts to the Plaintiff acceptance of its unreasonable accommodation of one year's unpaid leave, (2) willfully choosing to terminate the Plaintiffs before the time of their proposed bonus payout, and (3) confronting Plaintiffs with the Hobson's choice of either forfeiting their legal right to sue Defendant for racial discrimination on the one hand or forfeiting their year-end bonuses on the other, Defendant acted unfairly, unconscionably, recklessly, and in utter and conscious disregard of the Plaintiff's rights, thus authorizing punitive damages.

## VII.

## ATTORNEYS FEES

64. Plaintiff request this Court award them reasonable and necessary attorney fees and costs. Plaintiff retained the Woodfill Law Firm, PC, to represent them in this action and have agreed to pay reasonable and necessary attorney's fees.

65. WHEREFORE, Plaintiff, DEVRON TEMPLE, respectfully request that the Court summon Defendant, INDORAMA VENTURES OXIDES LLC., to appear and answer herein,

that the Court, after final trial hereof, order Defendant to compensate Plaintiff for their damages, and grant such other and further relief, at law and at equity, to which Plaintiff may show themselves entitled.

>Respectfully submitted,
>
>**WOODFILL LAW FIRM, P.C.**
>
>*/s/ Raven Radley – Van Reenen*
>**Jared R. Woodfill**
>Attorney-in-Charge
>Texas Bar Number: 00788715
>Federal Bar Number: 750312
>**Raven Radley – Van Reenen**
>Texas Bar Number: 24121933
>Federal Bar Number: 1061200
>3 Riverway, Suite 750
>Houston, Texas 77056
>(713) 751-3080 Telephone
>(713) 751-3058 Facsimile
>Email: woodfillservice@gmail.com (service only)
>Email: jwoodfill@woodfilllaw.com;
>rradley@woodfilllaw.com (non-service only)
>***Attorneys for Plaintiff***